In the Matter of the Judicial Settlement of the Accounts of CALVIN J. WHITE, as Executor, etc.

The will of H. gave her house and lot to E.; it provided that if at her death she was not possessed of a house and lot, her executor should pay to E. $2,000, on consideration that E. should pay to a half-brother of the testatrix a specified annuity, and should, at the time of the payment to her of the $2,000, or the conveyance of the house and lot, give security for the payment of the annuity. The will then gave legacies of $100 each to seven persons named, three of whom were relatives and one was the annuitant. The terms of all the gifts were: "I give and bequeath." Then

followed these provisions: "If before my decease I pay any of the above bequests or all of them, a receipt from any or all of them will be a satisfaction of this bequest.  *  *  *  I order that in case my estate exceeds the amount of the above bequests to each individual, then my executor must pay to the above persons the excess in the proportion as the amounts of the bequests are to the whole amount, and in case my estate falls short, then each of the above bequests must share in the shortage in the same proportion.  In other words, the excess or shortage must be shared *pro rata* as the bequests are."  There was a surplus for distribution under this clause.  The testatrix died seized of the house and lot mentioned; the annuitant died before the testatrix.  In a proceeding involving the construction of the will, *held*, that the gift to E. was a specific devise with a substitution of an equivalent in money in case of a sale; that the words "above bequests" in the provision disposing of the surplus, did not include the devise or the contingent substituted bequest; and so, E. was not entitled to share in the surplus.

*In re White* (54 Hun, 106), reversed.

(Argued January 23, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made at the June Term, 1889, which reversed a decree of the surrogate of Yates county settling the accounts of an executor.

The controversy hinged upon the construction to be given to the will of Sarah Hoover, deceased, of which the said Calvin J. White was the executor.

The material clauses of the will are as follows:

"First. After all my lawful debts are paid and discharged, I give and bequeath to Mary F. Emerson, wife of B. K. Emerson, or his heirs, my house·and lot in the village of Dundee, if I am possessed of one at my death, or if I am.not possessed of one I order my executor, hereinafter named, to pay to the said Mary F. Emerson two thousand ($2,000) dollars, on condition that the said Mary F. Emerson pay a yearly or annual payment to my brother, John Emerson, of sixty ($60) dollars, as long as he survives me; and the said Mary F. Emerson must, at the time of payment of the two thousand dollars to her or the conveyance of my house and lot to her, execute a bond of security to satisfy my executor that the sixty dollars will be paid annually to my brother, John Emerson.

"Second. I give and bequeath to David Hoover, son of Joseph Hoover, of Michigan, one hundred dollars, and his receipt, if paid by myself, will be a satisfaction for this bequest.

"Third. I give and bequeath to Sarah H. Mead, wife of William Mead, one hundred dollars, and her receipt, if paid by myself, will be a satisfaction for this bequest.

"Fourth. I give and bequeath to Mrs. E. M. White, wife of C. J. White, and to William Emerson, my brother, and to Mary Fenno, wife of Stephen Fenno, and to Stephen A. Fenno, and to Calvin J. White, each one hundred dollars apiece, and if, before my decease, I pay any of the above bequests, or all of them, then a receipt from any, or all of them, will be a satisfaction for this bequest.

"Fifth. I hereby constitute and appoint Calvin J. White, of Dundee, N. Y., to be my sole executor of this my last will and testament, hereby revoking all former wills by me made, and I hereby give him, and empower him to deed and convey away, as he sees fit, my real property, if I am possessed of any at my death.

"I order that in case my estate exceeds the amounts of the above bequests to each individual, then my executor must pay to the above persons the excess in proportion as the amounts of the bequests are to the whole amount; and in case my estate falls short, then each of the above bequests must share in the shortage in the same proportion. In other words, the excess or shortage must be shared *pro rata* as the bequests are."

The facts, so far as material, are stated in the opinion.

*William H. Smith* for respondent. Where words used in a will have two significations, the one legal and technical, the other common and colloquial, and where the ordinary or colloquial sense does not clearly appear to have been intended by the testator, the technical sense and the legal operation resulting from it must be adopted. (*Winslow* v. *Tighe*, 2 B. & B. 195, 204; *Stubbs* v. *Roth*, Id. 548, 553; *Synge* v. *Hales*, Id. 499, 506.) Where the words of a will are unambiguous, they cannot be departed from merely because they lead to conse-

quences capricious, or even harsh and unreasonable. But where they are capable of two interpretations, that construction of them is to be adopted which is in accordance with an intelligible and reasonable, and not a capricious or anomalous result. (*Bathurst* v. *Errington*, L. R. [2 App. Cas.] 698.) There was no pecuniary legacy to the respondent under the first clause in the will, except upon a condition which, indeed, was contemplated by the testatrix as possible, but which must have been in an extreme degree improbable at the time her will was made. (*Maitland* v. *Adair*, 3 Ves. 231; *Henwood* v. *Overend*, 1 Mer. 23; *Sholl* v. *Sholl*, 5 Barb. 312; *In re Karr*, 2 How. Pr. [N. S.] 405.)

*Theodore Bacon* for appellant. The devise of the house and lot, instead of being a specific gift to Mary F. Emerson, passing to her the legal title in fee, was a contingent devise, dependent upon the ownership being in testatrix at the time of her decease. (*Tifft* v. *Porter*, 8 N. Y. 514; 2 Redf. on Wills, 439.) The rights of Mrs. Emerson under the will must be ascertained by taking the whole of the provision made for her in the first clause of the will, and its general provisions and language, and ascertain therefrom what was the intention of the testatrix. (*Wager* v. *Wager*, 96 N. Y. 164.) The court will not struggle to exclude Mrs. Emerson from the residuary clause, and will not do so unless compelled so to do by ascertaining from the will that, beyond question, that is its plain and clear intent. (Redf. Law & Pr. 569; 2 Redf. on Wills, 473, § 49.) The only question in this case is to ascertain the intention of the testatrix from all the provisions of the will. (*Davis* v. *Crandall*, 101 N. Y. 319.) Costs should not be allowed to the appellant out of the fund. (70 N. Y. 81.)

FINCH, J. We are required on this appeal to determine the construction of a will about which the courts below have disagreed. The testatrix owned a house and lot of the value of two thousand dollars, and disposed of it by the first clause of her will which reads: " After all my lawful debts are paid and

discharged, I give and bequeath to Mary F. Emerson, wife of B. K. Emerson, or his heirs, my house and lot in the village of Dundee, if I am possessed of one at my death, or if I am not possessed of one, I order my executor hereinafter named, to pay to the said Mary F. Emerson, two thousand dollars, on condition that the said Mary F. Emerson pay a yearly or annual payment to my brother John Emerson of sixty dollars, as long as he survives me; and the said Mary F. Emerson must, at the time of payment of the two thousand dollars to her, or the conveyance of my house and lot to her, execute a bond of security to satisfy my executor that the sixty dollars will be paid annually to my brother John Emerson." The devisee named in this clause was the wife of Benjamin Emerson who was a half-brother of deceased, as was also John Emerson named as annuitant. Then follow in the will seven separate bequests of one hundred dollars each to seven different persons, three of whom were relatives of the testatrix and four strangers in blood, but two of the latter being the person named as executor and his wife. One of the relatives was William Emerson a half-brother of the testatrix.

The will then proceeds: "I order that in case my estate exceeds the amount of the above bequests to each individual then my executor must pay to the above persons the excess in the proportion as the amounts of the bequests are to the whole amount; and in case my estate falls short then each of the above bequests must share in the shortage in the same proportion. In other words the excess or shortage must be shared *pra rata* as the bequests are."

The surrogate decided that the gift to Mrs. Emerson of the house and lot was a specific devise, and that she was neither a general nor residuary legatee and was entitled to nothing out of the estate beyond the house and lot of which the testatrix died seized and which as a consequence passed by an effectual devise. In settling the accounts of the executor the surrogate ascertained that there was a surplus for distribution amounting to $3,885.63, after paying all expenses and legacies, and thereupon decreed that each of the seven legatees to whom respect-

ively one hundred dollars had been bequeathed was entitled to one-seventh of such surplus, or about $555 to each. John Emerson, the annuitant, died in the life-time of the testatrix, so that at her death the charge upon the land in the hands of Mrs. Emerson disappeared.

The General Term on appeal reversed this decision, and held that Mrs. Emerson was one of "the above persons" to whom "the above bequests" had been given, and so was entitled to share *pro rata* in the surplus, with the result that in addition to the house and lot she would be entitled to have twenty-twenty-sevenths of the surplus, or about $2,900, the remaining seven-twenty-sevenths only going to the other seven legatees in equal proportions, giving to each about $144, in addition to the $100 bequeathed.

It is obvious that the will is very inartificially expressed and indicates an inexperienced hand. A devise of land is not only described as a bequest, but a conveyance to the devisee is contemplated where none was needed or possible, and a bond to secure an annuity even when in effect charged on the land. We must, therefore, not rely too much upon forms of expression, but seek to extract their meaning from the entire scope and purport of the will.

While there is very little outside of its language to aid us in determining the actual intent of the testatrix, we are all impressed with a conviction that she meant to distribute the residue among the seven legatees to whom fixed amounts of money were explicitly bequeathed, and did not mean to include the devisee of the land in the final gift. While she uses the word "bequeath" in devising the house and lot so that it is possible to say that she may have regarded it as among her "above bequests," and directs an excess to be divided among or a deficiency to be charged against "the above persons," in proportion to the amounts of their bequests, and, therefore, the literal language seems broad enough to cover the conclusion of the General Term; yet a careful examination of that language will show that its use by the testatrix had a narrower and more limited application.

The test expressions are "the above bequests" and "the above persons," and the decisive inquiry is to what and to whom the testatrix referred. The language, literally construed, might include Mrs. Emerson, but the will shows that such literal construction was not the necessary sense of the words as used by the testatrix. That becomes apparent when we discover that just before the final clause of distribution in which appears the phrase "the above bequests," that identical expression was used as applicable only to the seven legatees, and not at all and by no possibility including Mrs. Emerson. Clause second of the will gives to David Hoover one hundred dollars; clause third to Mrs. Mead one hundred dollars; and then clause fourth reads thus: "I give and bequeath to Mrs. E. M. White, wife of C. J. White, and to William Emerson, my brother, and to Mary Fenno, wife of Stephen Fenno, and to Stephen A. Fenno, and to Calvin J. White, each one hundred dollars apiece, and if before my decease I pay any of *the above bequests*, or all of them, then a receipt from any or all of them will be a satisfaction for this bequest." In this clause the phrase "above bequests" was plainly used in a limited and not in a literal sense. It did not cover or refer to Mrs. Emerson or the devise and substituted bequest to her, for it contemplated a payment in testatrix's life-time of a specific sum absolutely and certainly bequeathed; and by the words "the above bequests" was certainly meant some or all of the seven legacies of one hundred dollars each, and not at all the devise to Mrs. Emerson or the contingent substituted bequest to her. With that use and meaning of the phrase in her mind the testatrix repeats it in the next or fifth clause, and having just departed from its literal sense and given it a limited application, we ought to presume a continuance of the same meaning in the use of the same words, unless some forcible reason can be given why she should have used the same phrase in two different ways and to convey two different meanings.

On the contrary, we think there are many indications in the scope and purport of the will that the meaning was not

changed in the use of the phrase in the fifth clause, and that the testatrix did not, with a studied or careless ambiguity, at once revert from her own limited meaning to the literal and broader sense of the phrase.

It must be conceded that the gift of the house and lot, if it had stopped there, without the alternative and contingent provision, would have been a specific devise, not sharing in a residuary surplus and not made liable to abatement if the personal estate should prove to be insufficient to pay the legacies. The misnomer involved in the word "bequeath" would not have changed its character or indicated that the testatrix failed to understand that character. As a devise of a specific parcel of land, irrespective of what might or might not prove to be its value, and charged with the payment of a fixed annuity, the testatrix could not and certainly did not look upon it as liable to abatement in case of a deficiency for the payment of the legacies. I think we may be reasonably sure that in giving the house and lot simply the testatrix did not regard it as the "amount" of a bequest, or as in some unexplained way liable to an abatement, which the ordinary rules of law do not recognize.

It follows, therefore, that a different construction must rest upon the alternative and contingent clause which never took effect, and which must dictate and control the construction instead of the character of the primary and principal gift. It seems probable that the testatrix did not seriously contemplate the sale of her house and lot, but knowing that she might wish to sell, or have an offer so favorable as to make it wise to accept it, and desiring that Mrs. Emerson and the annuitant, her half-brother, should be put in no worse condition if she should have no house and lot at the date of her death, the testatrix substituted for it, in that contingency, the value which she fixed upon it. The clause, therefore, was purely one of substitution, meant to preserve unchanged the situation of both devisee and annuitant notwithstanding some possible sale of the land; and ought not to control our judgment as it certainly did not her intention. Its purpose was to fix and perpetuate and

establish against a contingency one substantial result, and not to alter and modify it beyond the mere substitution of an equivalent in money for the land sold. How is it possible for us to believe that the testatrix really intended to make her retention or sale of the land the determining factor for an increase or diminution of her specific and principal gift? Did she in truth mean that in case of a surplus, Mrs. Emerson taking the land as devisee should have only that, as would be the legal effect of the principal gift, but taking the substituted gift should thereby become entitled also to most of the surplus, and that in case of a deficiency the devisee should hold the land unaffected by it, but if that should happen to have been sold so that the substituted gift should take effect, that then that gift should bear its share of the deficiency? It seems to us that the testatrix meant none of those things, but contemplated merely in the possible contingency the substitution of an exact equivalent which should leave the substantial result unchanged. Observe how oddly the other construction bears upon the annuity and the annuitant. Suppose that the house and lot had been sold so that Mrs. Emerson could only take the money gift, and then that there was a deficiency so that all legacies necessarily abated and Mrs. Emerson was called on to execute the bond to secure the annuity. She was only to do that " at the time of payment of the two thousand dollars to her, " not at the time of payment of any less sum. And the annuitant himself was a legatee to whom a bequest was given, and one of " the above persons " in the unlimited sense of that phrase. Was his annuity also to abate, and a bond to be given for a less sum than the will fixed? It is reasonably certain that the testatrix contemplated no reduction of that annuity, nor of what she had given to the person charged with its payment. For that payment she was to give a bond, but only when and upon condition that she received either the house and lot or " the two thousand dollars " to be substituted for it. One or the other of those gifts she contemplated as a certainty upon which she founded the annuity, and assuredly she did not contemplate a possible reduction which should not only increase the burden

upon Mrs. Emerson but thereby put the annuity itself in peril.

It is further not unworthy of consideration that the seven bequests to the seven legatees were of fixed, certain and definite amounts as described on the face of the will, while the gift to Mrs. Emerson was not of such a specified amount, whether in land or money. The actual value of the land as such was not declared, for the substituted money might or might not be that value, and while the present value of the two thousand dollars charged with the annuity could be ascertained, its "amount" was not stated in the will: and when the testatrix speaks of "the amounts of the above bequests to each individual" she evidently refers to bequests the "amounts" of which she, herself, had specified and fixed.

And so it seems to us that the limited meaning which the testatrix herself gave to the phrase "the above bequests" was not immediatly after abandoned for the broad and literal one, but remained fixed in her mind and governed her use of the same words in the fifth clause.

The judgment of the General Term should be reversed and that of the surrogate affirmed, with costs in all courts to the executor.

All concur.

Judgment accordingly.