PARK NATIONAL BANK OF NEWARK, as Exr., Plaintiff, v. DILLON et, Defendants.

Common Pleas Court, Licking County.

No. 45510. Decided September Term, 1959.

388

Robert H. Flory, for plaintiff.

Thomas E. Norpell, for defendants Frances Dillon Harlan, William Thomas Dillon and Helen Wilson Dillon.

## OPINION

By HOLTSBERRY, J.

This action asks for the interpretation and construction of the last will and testament of Carl J. Dillon. The aged testator had devoted many years of his life to his profession of medicine, with offices in Newark. About one year before his death in September, 1958, the will in question was drafted. The typography, spelling and choice of words, the failure to complete a number of blank spaces, together with the evidence adduced and reasonable inferences therefrom, all clearly indicate that the scrivener was not an attorney. It is apparent that the drafted will upon the printed blank Dr. Dillon obtained, was drafted by a layman, quite probably by himself.

The will, dispositive of a rather sizeable estate, includes ten items. He favorably remembered some 17 individuals, a hospital, church and public library. Each of the first nine items begins with the expression:

"I give, devise and bequeathe" (sic).

Item 1 "gives, devises and bequeathes" an apartment building and a sum of cash. Item 2 "gives, devises and bequeathes" a duplex residence. Item 3 "gives, devises and bequeathes" a residence. Item 4, Item 5, Item 6, Item 7, Item 8 and Item 9 "give, devise and bequeathe" cash legacies.

The problem confronting the Park National Bank of Newark as Executor concerns the distribution of the rather sizeable residue of the estate, and such problem is raised by Item 10, which reads:

"Item 10 I hereby direct that rest and residue of my estate be converted into cash and be divided equally among all devisees herein before named."

Who are "all devisees," contemplated by the testator? Did he mean all named beneficiaries in the preceding nine items, or only those individuals given real property?

The first three items of the will specifically devise separate, distinct and individual parcels of real estate. The next six are specific gifts of money to individual persons and institutions.

The technical, legal meaning of the word "devisee" is: "The person to whom lands or other real property are devised or given by will."

Concerning the use of this word, the same dictionary at page 573 says:

"The term 'devise' is properly restricted to real property, and is not applicable to testatmentary dispositions of personal property, which are properly called 'bequests' or 'legacies.' But this distinction will not be allowed in law to defeat the purpose of a testator; and all of these terms may be construed interchangeably or applied indifferently to either real or personal property, if the context shows that such was the intention of the testator."

Rawle's Third Revision of Bouvier's Law Dictionary defines bequest, legacy and devise as follows:

"Bequest: A gift by will of personal property. Vol. 1, page 399.

"Legacy: A gift of personal property by last will and testament, Vol. 2, page 1900;

"Devise: A gift of real property by a last will and testament. Vol. 1, page 861."

Webster's unabridged dictionary defines the words bequest, legacy and devise in this manner:

"Bequest: 1. The act of bequeathing or leaving by will.

"2. Law. A legacy of personal property.

"Legacy: Property, especially personal property, bequeathed by a testator: a bequest;

"Devise: 1. Law. A gift of lands by a last will and testament.

"A bequest and a legacy differ from a devise in that they bequeath personal property, but the word is sometimes loosely used for any testamentary disposition of property.

"2. The act of bequeathing lands.

"3. A will, or a clause of a will, conveying real estate."

It must be remembered in searching for judicial interpretation of the word "devise," that certain references made in the Volume of Ohio Jurisprudence on the subject of wills, deals solely with the differences between ancestral and non-ancestral property, and the law cited therein has nothing to do with the problem here involved.

In a strict sense, the word "devise" is the proper term to be used in a will to denote a gift of real property, and a "devisee" is, then, in this strict sense, a recipient of real property.

But it must be noted that in the will under consideration, written apparently by a layman, the descriptive verbs "give, devise and bequeathe" are used repeatedly in each of the first nine items, without any attempt by choice of verbs to distinguish beween gifts of real property and personal property.

Under the circumstances it seems unlikely and artificial suddenly, in Item 10, to impose on the testator's apparent intent a strict construction of the word "devisee." There had been no intent in the preceding nine items to place a strict technical meaning on these legal words. In fact, one can imagine the testator asking, "What shall I call the various beneficiaries, if not 'devisees'? 'Bequeathees'? 'Bequestees'?"

It is stated in **Moon, Admr., v. Stewart, 87 Oh St 357**: "Rules for construing wills are less rigid than those for construing other instruments. Where a will bears the earmarks, as in this case, of having been drawn by a layman, and not by a lawyer, the court in the endeavor to arrive at the intent of the testator will not view the language technically, but liberally, and with reference to its popular meaning. It is very rare that any two wills present precisely the same question, and, therefore, in construing doubtful clauses the court will ascertain the intention of the testator, as the language of such clauses may reasonably be interpreted in the particular case. It has been well said that cases on wills may well guide as to general rules of construction, but unless a case be directly in point in its essentials circumstances and data, it should have little weight with the court."

In Page on Wills, Volume 1, under the subject of Definitions, this Court notes that there are two classifications of definitions, technical meanings and popular meanings. Under popular meanings the work says that the word "devisees" in a loose and popular sense may be applied to one to whom personalty is given by will, and that "bequeath," and "devise," are frequently interchanged in popular usage. "Devise" is often used to refer to personalty and "bequeath" to include realty. See: Evans v. Price, 118 Ill. 593; Borgner v. Brown, 33 Ind. 391; Ladd v. Harvey, 21 N. H., 514; Allen v. Cameron, 181 N. Car.; 120; Breen v. Davies, 94 Kan., 474; In re White, 125 N. Y., 544; In re Campbell, 27 Utah, 361; White v. Mass. Institute, 171 Mass. 34; Tyrell v. Kelley, 104 Neb., 555.

There can be no hard and fast rule which would prevent words from being wings of intended action. The term "goods and effects," has been held to be broader than the word "goods," and is generally held to pass real estate as well as personalty. 54 A. L. R., 97. In such cases a court must look into the whole will with the view of ascertaining the sense in which the terms were used by the testator, and, when such sense is ascertained, to give it the effect intended. The words "personal estate," concededly have the technical reference only to personal property, but when there is apparent intent to include real estate, courts have given such construction. **Davisson v. Sparrow, 58 Abs 529.** The obvious intent of the testator must prevail over the strict grammatical construction of testamentary language. All rules of construction, however logical or authoritatively promulgated, are useful only so far as they aid, if they do, in reaching the correct conclusion of testator's intent. **41 O. Jur., pages 576 and 642.**

Where intent appears otherwise courts ought not permit themselves to be enslaved by mere technical words. This Court's extensive study of the instant case reveals, from voluminous litigation, that evils have resulted from some lawyers and judges seemingly love for the past, and

technicality. We have greatly contributed to the eclipse. Legal language should not be the lawyers mystic art, but must communicate to be his tool. His words must deal with the ordinary happenings and facts of everyday life, and activity. Slow has been the lawyers willingness to loosen his grip on legal jargon. It is said that as late as 1800, lawyers in the accounting office of the English Exchequer, kept money accounts in Roman numerals rather than Arabic. Antiquity can only be justified if accuracy demands it. Useless and redundant words are common in wills. Commonly used is "I give, devise and bequeath my property, real, personal and mixed." What meaning could be given the word give, that is not covered by bequeath and devise? How does mixed property, whatever it is, differ from real or personal property?

Unless a testator attempts to offend the law, or public policy, his intent must become the guiding rule. This must be ascertained from the language used in the will, read in the light of known surrounding circumstances at the time of execution of the will, and with an eye kept on the subject matter of disposition.

Construction given to any part of the will should conform to the general scope and purpose, each part shall be construed with the others to make a consistent whole. **Parker v. Parker, 13 Oh St 95; Townsend v. Townsend, 25 Oh St 477.** Intention is not to be gathered from a detached portion alone. **Williams v. Leach, 17 Oh St 171; Ashworth v. Carleton, 12 Oh St 381; Creamer v. Harris, 90 Oh St 160.**

It is stated in Page on The Law of Wills, Vol. 2, at Sec. 921:

"In construing his will the Court may take into consideration the fact that the draftsman of the will was on the one hand a lawyer who knew and appreciated the problems which were involved, and who was able to use technical legal terms to express the intention of the testator, or on the other hand, a man who was not learned in the law, who did not understand the problems which were involved (and) who did not know the correct use of technical legal terms . . . if the will is drawn by one who is not a trained lawyer, the Court will be more inclined to assume that the will is written in the language of the layman, and will regard the language of the will as used in its popular rather than its technical meaning."

It is concisely stated in 95 C. J. S., Sec. 611:

"As a general rule, the meaning of a doubtful word, phrase, or sentence may be ascertained by reference to the meaning of words, phrases, or sentences associated with it, or by comparison with words used in other parts of the will. . . . (A)nd so a doubtful word, phrase, or sentence may be construed by comparing it with similar words, phrases, or sentences in other parts of the will in which the intent of the testator is clear."

It is the opinion of this Court, and this Court so holds that the clear and obvious intent of the testator in Item 10 of his will was that all of the persons named in the preceding nine items thereof, including the Wright Memorial E. U. B. Church, the Newark Hospital, and the Newark Public Library, should share equally in the residuary estate, being all "beneficiaries" or, as stated by the testator, "devisees."

This Court brings this opinion to a close with the hope it has not transgressed upon the admonition of Pope, who said words are like leaves, and where they most abound, much fruit of sense beneath is rarely found.